IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANELLE W.,[1]

       Plaintiff

       v.

NANCY A. BERRYHILL,
Acting Commissioner Social Security
Administration

       Defendant
_____

Civ. No. 3:17-cv-01014-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under the Social Security Act. Tr. 19-31.[2] The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff filed an application for DIB on April 25, 2013, alleging disability an onset date of March 28, 2013. Following a hearing, an administrative law judge (ALJ) issued an unfavorable decision denying Plaintiff's claim. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both supporting and deterring evidence from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1029, 1036 (9th Cir. 2007)).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Aukland v. Massanari,* 257 F.3d 1033, 1034-35 (9th Cir. 2000). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). A court may not reverse an ALJ's decision on account of a harmless error. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Tommasetti v. Astrue,* 533

F.3d 1035, 1041 (9th. Cir. 2008). Finally, the ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995). *See also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence).

## DISCUSSION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration (SSA) uses a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 416.920, 20 C.F.R. 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. *Id.* At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.* If the reviewing agency determines that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not go onto the next step. *Id.*

The ALJ found Plaintiff suffered from the following severe impairments: degenerative disk disease, minor motor seizures, depression and anxiety. Tr. 21. The ALJ found Plaintiff's RFC allowed her to perform less than the full range of light work. Tr. 23. Specifically, that Plaintiff could: frequently lift and/or carry ten pounds; occasionally lift and/or carry twenty pounds; sit, stand and/or walk six hours per eight hour workday; occasionally climb stairs; and is

limited to simple routine work. Tr. 23. The Vocational Expert (VE) determined, based on the hypothetical provided by the ALJ, that Plaintiff could perform occupations that exist in significant numbers in the national economy. Tr. 30. Therefore, the ALJ concluded that Plaintiff was not disabled at any time from March 28, 2013 through January 12, 2016. Tr. 31.

## I. The ALJ Did Not Err in Evaluating Plaintiff's Subjective Symptom Testimony.

Plaintiff argues the ALJ discredited her subjective symptom testimony without providing a clear and convincing rationale. Absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9h Cir. 2008); *Lingenfelter*, 504 F.3d at 1036. The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

It is important to note that rather than reject outright all of Plaintiff's testimony about her limitations, the ALJ instead found Plaintiff was not reliable as to the full extent of her

limitations. Plaintiff alleged debilitating limitations. Plaintiff testified that although she shops for groceries without help from others, "I am paying for it the next day. I'm very, very sore." Tr. 55. Plaintiff testified she has trouble walking up steps and essentially spends her day "in a lot of pain all the time" while sitting, laying, or walking around in her bedroom. Tr. 44-45. Plaintiff estimated spending 70% of her day lying down. Tr. 45. Plaintiff analogized her pain to someone twisting a knife in her back and twisting it around. Tr. 45-46. Plaintiff testified that "I have weakness in my leg, like I can't – I can't lift my leg. If I'm carrying anything, I can't lift my left leg to step up on steps." Tr. 46. Plaintiff testified she could no longer stand in the shower. Tr. 51. Clearly, had the ALJ credited Plaintiff's testimony, she would be disabled under the Act.

Instead, the ALJ acknowledged Plaintiff was limited on account of back pain, but determined that Plaintiff could sit, stand, and/or walk for six hours each workday, and could frequently lift 10 pounds. In formulating Plaintiff's RFC, the ALJ was tasked with balancing Plaintiff's severe restrictions in her self-reporting with other evidence in the record. Ultimately, the ALJ concluded Plaintiff was not as limited as alleged.

The ALJ noted that in her function report, Plaintiff "described back pain that limited her ability to do 'anything.'" Tr. 24 (quoting Tr. 193 ("My back and hip pain limit me to do anything.")). Plaintiff's function report is dated May 6, 2013. Tr. 200. In that report, Plaintiff stated it hurts when she lifts, bends, stands, or walks. Tr. 193. Additionally, Plaintiff stated her arthritis was so bad she could not open lids of medication. Tr. 193.

In contrast to Plaintiff's severe self-limitations are the observations of Kim Webster, MD. Dr. Webster examined Plaintiff in August 2013 as part of a comprehensive musculoskeletal evaluation. Dr. Webster examined Plaintiff three months after Plaintiff completed her adult function report. Dr. Webster noted:

> She moves around easily, being able to remove and replace her shoes, get on and off the examination table, and go from a sitting to supine and supine to sitting position, all without difficulty. There is no evidence of poor effort or inconsistencies. There is no pain behavior.

Tr. 401.

Dr. Webster noted Plaintiff's "Station and gait were normal." Tr. 402. Plaintiff could stand on each leg independently and walk heel to toe. Plaintiff did not use or need an assistive device. Plaintiff exhibited a full range of motion in hips with negative straight leg raise in sitting and supine positions and no evidence of foot drop bilaterally. Tr. 402. Dr. Webster noted:

> The spine is straight and nontender to palpation. There is no stepoff noted in palpating the spinous processes of the thoracic or lumbar spine. There is no atrophy of any muscles of the thoracic or lumbar spine, and no masses are palpable in the lumbar spine area. There is no pain to percussion, axial loading or rotation of the shoulders while standing. There is no pain to palpation over the greater trochanters. There is no pain with internal/external rotation of the hips. No seizure disorder was observed.

Tr. 402-03.

Plaintiff's muscle bulk was normal, and she had "5/5 strength in the upper and lower extremities, including abduction/adduction in the hips; flexion/extension in the hips, knees and ankles; inversion/eversion in the feet, lumbricals, intrinsics and extensor pollicis of both hands." Tr. 403. In contrast to Plaintiff's allegation three months earlier that her arthritis prevented her from opening the lids of medication, Dr. Webster observed:

> The claimant is able to grip and hold objects securely to the palm by the last three digits. The claimant is also able to grasp and manipulate both large and small objects with first three digits. Both thumbs function with normal opposition. There is no evidence of myotonia or grip release. There is no evidence of localized tenderness, erythema or effusion. There is no evidence of diminution of function with repetition. There is no evidence of spasticity or ataxia. Sensation to touch and pin in all five fingers is normal. Join position, vibration sense, graphesthesia and sterognosis are normal. Subjective and objective findings are consistent. Functional limitations are based on both subjective and objective findings.

Tr. 402.

6 – OPINION AND ORDER

Although Dr. Webster confirmed Plaintiff had atrophy in her left calf—12.5 inch circumference for right calf versus 12 inch circumference for left calf—he concluded, "There is no objective evidence to limit standing, walking or sitting." Tr. 403-04.

In light of the differences between Plaintiff's self-limitations and the observations and conclusions of Dr. Webster three months later—including that Plaintiff moved around easily, removed her shoes, and switched from supine to standing positions without difficulty (or pain behavior)—substantial evidence supports the ALJ's conclusions that Plaintiff was less-than fully credible as to the extent of her limitations.

Additionally, the ALJ concluded that Plaintiff's medications appeared to alleviate her pain, at least to the extent provided in the RFC. This too finds substantial support in the record. In May 2011, Plaintiff's "back pain was fairly well controlled but not resolved with current Fentyl Patch." Tr. 293. In May 2015, "Her back pain has been about the same lately, and she feels that her current medication protocol is helpful to decrease pain and improve her ability to function." Tr. 430. In September 2015, medication allowed Plaintiff "to complete most of her ADL. Sometimes can go camping but again difficulty lately with increased weakness." Tr. 412. While some days appeared to be worse than others, substantial evidence supports the ALJ's conclusion that medication and treatment allowed Plaintiff to do more than alleged.[3]

The ALJ provided clear and convincing reasons for finding the claimant's testimony regarding the severity of the symptoms less-than fully credible. *Carmickle*, 533 F.3d at 1166; *Lingenfelter*, 504 F.3d at 1036.

---

[3] While Plaintiff's main limitations stem from back pain, she also alleged disability due to seizures. As noted by the ALJ, the fact that Plaintiff maintained a driver's license and continued to drive suggests her seizures were controlled with medication. This conclusion, specifically referenced by the ALJ, also supports the ALJ's finding that Plaintiff was less-than fully credible as to the extent of her limitations.

## II. The ALJ did not err in rejecting lay witness testimony.

Plaintiff's mother and sister provided third party reports. These reports generally mirrored Plaintiff's own statements regarding her limitations and daily activities. Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless she gives germane reasons to reject their testimony. *Stout.,* 454 F.3d at 694. "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with the medical record is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211,1218 (9th Cir. 2005).

The ALJ gave the above statements partial weight, noting that although the record supports some restrictions, Plaintiff was not limited to the degree outlined in the third party reports. Tr. 26. The ALJ concluded:

> The evidence does not show limitations that would prevent the claimant from meal preparation and light household chores. As described above, examinations have been unremarkable and the claimant's pain has been managed with medication. She has not undergone surgery, treatment has been conservative, and the record contains very limited objective findings. I note that although both parties described problems using hands, the record does not contain objective testing to substantiate this allegation.

Tr. 26.

These are germane reasons for assigning partial weight to the third party reports. As outlined above, substantial evidence supports the ALJ's conclusion that Plaintiff's pain has been managed with medication. Additionally, both third party reports, written in June 2013, state Plaintiff is limited in using her hands. Tr. 208; 222. Results from Dr. Webster's objective tests three months later indicated Plaintiff was not limited in using her hands. Tr. 402.

Plaintiff also argues the ALJ erred in assigning little weight to the opinions of Karla Goodman, N.D., and David Chang, N.D. As naturopaths, Dr. Goodman and Dr. Chang are not

"acceptable medical sources." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). However, the ALJ must evaluate these "other opinions" and these opinions may— when considering factors including the length of the relationship and the level of consistency with other evidence in the record—outweigh the opinion of an "acceptable medical source" such as Dr. Webster. SSR 06-03p, at *4-5.

In a letter dated September 11, 2015, Dr. Goodman opined that Plaintiff's pain and side effects from medication make Plaintiff groggy and lethargic, and opined Plaintiff "is not, in my opinion, able to concentrate long enough to do any type of job which requires even short periods of focus. Due to her physical limitations she is not able to perform any work that requires ambulation." Tr. 405. Prior to writing the letter, Dr. Goodman treated Plaintiff during the course of four office visits. Tr. 412; 415; 418; 422.

The ALJ assigned little weight to Dr. Goodman's opinion, as she did not provide an explicit RFC for Plaintiff, did not provide any objective basis for her opinion, relied mostly on Plaintiff's self-reporting, and was inconsistent with Dr. Webster's objective findings. Tr. 28. These are germane reasons for assigning little weight to Dr. Goodman's opinion. *Molina*, 674 F.3d at 1111. That an opinion is inconsistent with medical evidence in the record is an acceptable reason to discount the opinion. *Jamerson*, 112 F.3d at 1066–67. As described above, Dr. Webster (an acceptable medical source) based his opinion on the results of objective findings. Dr. Webster concluded, based in part on the fact that Plaintiff had no limitations in bending, sitting up, removing her shoes, or getting on and off the examining table, that "There is no objective evidence to limit standing, walking or sitting." Tr. 404.

As to mental limitations, despite concluding Plaintiff could not concentrate or focus for even short periods, for any job, Dr. Goodman observed—in her fourth and final appointment

with Plaintiff before writing the letter—that Plaintiff's "Attention, concentration, thought content [within normal limits], Able to engage in normal daily activities without cognitive impairment. . . Neurologic [alert & oriented] x3, Cognitive functioning normal[.]" Tr. 413. In addition to being inconsistent with her own limitations for Plaintiff, Dr. Goodman's opinion is inconsistent with Dr. Webster's observations that Plaintiff was "Articulate, appropriate and affable without any emotional liability or evidence of thought disorder," Tr. 401, and his conclusion, based on Plaintiff's mental status exam, Tr. 403, that "There is no objective evidence for manipulative, visual, communicative or environmental limitations," Tr. 404. The ALJ did not err in assigning little weight to Dr. Goodman's opinion.

Dr. Chang treated Plaintiff with acupuncture on several occasions in 2015. In November 2015, Dr. Chang filled out a form detailing Plaintiff's restrictions. Dr. Change opined Plaintiff could neither frequently nor occasionally lift any weight. Tr. 530. He opined Plaintiff could stand and/or walk for two hours per day, sit three hours per day, and would lay on her back with a heating pad the remaining three hours. Tr. 529-30. Plaintiff could never reach for things, could not feel with her fingers, and could not perform fine manipulation with her fingers or gross manipulation with her hands. Tr. 530.

The ALJ assigned little weight to Dr. Chang's opinion. Tr. 28. The ALJ noted Dr. Change did not point to any objective testing supporting "this very limited residual functional capacity." Tr. 28. Additionally, the ALJ noted Dr. Chang's opinion was inconsistent with Dr. Webster's evaluation, which was based on objective findings. Tr. 28.

The ALJ did not err in assigning more weight to the opinion of an acceptable medical when that opinion was based on objective testing. It is unclear what objective testing, if any, Dr. Chang performed. Dr. Webster, however, clearly outlined the objective evaluations forming the

basis for his opinion. And as described above, the record supports the ALJ's determination that Plaintiff's medications adequately controlled her symptoms, at least to the extent that Plaintiff could perform simple and routine less-than light work.

"If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence in the record, the Commissioner's decision is affirmed. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 20th day of August, 2018.

_____/s/ Michae McShane_____
Michael J. McShane
United States District Judge